PER CURIAM.
Appellant instituted an action in the circuit court against the makers of a $75,000 collateral note, payable to the appellant, and against the appellees as sureties or guarantors of the note. The basis of the action against the appellees was the allegation that simultaneously with the making of the loan evidenced by the collateral note, and in consideration thereof, the appellees and the principal debtors *692 entered into an agreement with the appellant whereby they jointly and severally promised to pay to the appellant the indebtedness evidenced by the collateral note, within ten days after written notice of default under the collateral note. The complaint further alleged default of the note, notification of default as provided and failure of the appellees to pay. Attached to the complaint were the collateral note, notice of default and the agreement in which the appellant was referred to as “first party,” the principal debtors were referred to as “second parties,” and “third party,” and the appellees were referred to as “fourth parties.” This agreement recited in part as follows:
“7. The First Party agrees that in the event of default by the Second Parties and the Third Party in the payment of the moneys due pursuant to the collateral note attached hereto, the said First Party Shall give to the Fourth Parties no less than ten (10) days written notice of such default, and the Fourth Parties shall thereupon, within said period, pay said indebtedness to the First Party with all accrued interest to date, and thereupon the First Party shall endorse said collateral note, without recourse, to the Fourth Parties and shall deliver to the Fourth Parties the collateral pledged as security for said indebtedness, and the Fourth Parties shall thereupon become subrogated to all of the rights of the First Party to proceed against the Second Parties and the Third Party in accordance with the terms of said collateral note.
“In the event of default by the Second Parties and the Third Party in the payment of their indebtedness to the First Party, in accordance with Exhibit ‘A’ attached and/or the failure or default of the Fourth Parties to perform under this Paragraph ‘7’, the First Party may, at her option, exercise her remedies available under the collateral note attached as Exhibit ‘A’, or against the parties hereto for breach of this Agreement, or both, and in the event of public sale of the stock, notes and debentures given as collateral pursuant to said Exhibit ‘A’, the purchaser thereof, at such public.sale, shall be entitled to purchase the same and be entitled to all of the rights and benefits as owner of said stock notes and debentures under the said Stockholders’ Agreement and subject to the provisions of said Stockholders’ Agreement as though such purchaser were an original party thereto. The time of notice of sale of the stock, notes and debentures of the Corporation pledged with tlie First Party as collateral security under the collateral note shall run concurrently with the time given the Fourth Parties to redeem such collateral security in accordance with the provisions of this Paragraph 7’.”
By the terms of the collateral note, the loan of $75,000 was payable on or before January 25, 1958, and the note provided as security a pledge of certain certificates of stock and debentures which had an estimated market value of $200,000, and further provided that should the market value of the securities decline below the fixed value, the principal debtors agreed to make payment on account of the obligation or to deliver additional security to the satisfaction of the appellant. The original complaint and amended complaint were dismissed on the grounds that:
“That by the terms of the agreement attached to the complaint as Exhibit ‘B’, the plaintiff was required to give notice to the defendants, Jerome S. Sugerman and Morris A. Sugerman, by Jerome S. Sugerman, his agent, Harry E. Jaffee, Harlan Street and Leo Greenfield, referred to as fourth parties in said agreement, of the time of sale of the stock, notes and debentures of the corporation pledged with the plaintiff as collateral security.
*693 “That under the terms of said agreement, the notice of sale must run concurrently with the notice given to the defendant fourth parties of the default of the principal obligors on the note. That such notice was not given to any of the defendants.”
The amended complaint alleged that pursuant to the aforementioned agreement, the appellant had elected to exercise her remedy against the parties to the agreement and that following notice of default, she had offered into the registry of the court the collateral endorsed without recourse to the appellees and the collateral pledged as security. The second amended complaint, in addition, alleged that notice of default and notice of sale of the collateral had been concurrently served upon all of the defendants and pursuant to notice of sale the collateral was sold at public sale and the proceeds in the amount of $225 had been applied to the debt. The appellees filed their answer to the second amended complaint and filed a motion for summary judgment. The court entered its order granting appellees’ motion for summary judgment and dismissed appellant’s second amended complaint.
The determinative point on appeal is whether the trial court erred in entering summary judgment and thereby determining that the appellees were relieved and discharged from their obligation under the agreement. The appellees argue first that the appellant waived her right to look to them for payment when she did not comply with the agreement by giving them the required notice of default by the principal debtor and, concurrently, notice of sale of the collateral security; second, that they were discharged from their agreement where the appellant had colluded with the principal debtors to frustrate the attempt by the appellees to preserve the value of the collateral security; and third, that they were discharged from the agreement where the appellant failed to enforce the terms of the collateral note.
We conclude upon a careful review of the record, and more specifically the section of the agreement set out above, that the appellant was not required to sell the collateral before she could proceed against the parties for the breach of the agreement. The clear intent of the parties to the agreement was to consent to the loan and to “prevent the alienation of the said stock and the transfer thereof to persons other than the present stockholders.” By the agreement, the appellant was afforded an option to proceed against the principal debtors under the collateral note or proceed against the appellees for breach of the agreement, or both.
We have considered the second point raised by the appellees, and find it to be without merit.
Finally, the appellees point out that they were discharged from the agreement by the appellant’s failure to enforce the terms of the collateral note. These terms were as follows:
“[Sjhould the market value of the said securities decline below the value herein fixed, the undersigned hereby agrees to make payment on account of this obligation satisfactory to the said Payee, or to deliver to said Payee additional securities to the satisfaction of the said Payee. And for any other liabilities to said Payee whether due or not due or hereafter arising, the undersigned also hereby gives to said Payee a lien upon all property or securities given to or left in possession of the said Payee by the undersigned.”
Appellees contend that the appellant failed to protect them by failing to require (1) the posting of additional collateral security, (2) payment upon the principal obligation, or (3) imposition of a lien upon the principal debtors’ property; that appellant was well aware of the declining value of the stock posted as collateral security.
*694 In Stearns, Suretyship, 5th ed. 1951, p. 161, that author says:
“[M]ere delay or forbearance on the part of the creditor in attempting collection of the debt from the principal does not operate to discharge the surety. * * * -pjjg cre(jitor owes no duty to the surety to be actively diligent in pursuing the principal, unless he has expressly or impliedly contracted for such an obligation * * *.
“This holding seems reasonable when it is remembered that one of the main reasons why the creditor secures the promise of the surety is to avoid the necessity of attempting to enforce collection from the principal in the event that the latter defaults. It is also said that the surety has ample protection against the negligence and delay of the creditor through his right to pay the debt and bring his own .action against the principal, or by proceeding in equity to compel the principal to pay, or by requiring the creditor to sue the principal in accordance with statutory provisions, and he will not be permitted to exact from the creditor a greater degree of diligence than he himself is willing to exercise in his own interests. It is sometimes further said that the creditor’s mere forbearance is assumed to be for the benefit of the surety as well as the principal and, accordingly, the surety’s assent to such forbearance is assumed. However, the surety will not be discharged by mere passive inactivity even though it may be prejudicial to him in fact.”
The foregoing principle .quoted from Stearns on Suretyship, was enunciated long ago by the Supreme Court of Florida in Fegley v. Jennings, 44 Fla. 203, 32 So. 873, and although the principle as such in its entirety has not been applied by the Supreme Court of Florida subsequent to the Fegley case, nevertheless, portions thereof have been adopted and re-enunciated in Cochrane v. Town of Boca Raton, 112 Fla. 177, 150 So. 611, 613, and in Plant City Fla. v. Scott, 5 Cir. 1945, 148 F.2d 953, 956.
Finding as we do that the trial court failed to apply the applicable principles of law, it follows that the summary judgment appealed should be and it is hereby reversed.
Reversed.
HORTON, C. J., and PEARSON and 'CARROLL, CHAS., JJ., concur.